**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kirk Lankford, | No. CV-17-02797-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Joseph Taylor, et al., | |
| Defendants. | |

This is a prisoner civil rights action brought by Plaintiff Kirk Lankford ("Plaintiff"), who was originally proceeding *pro se* but is now represented by court-appointed counsel. Pending before the Court is a motion for discovery sanctions filed by the remaining defendants. (Doc. 111.) For the following reasons, the motion is denied.

**RELEVANT BACKGROUND**

I. Overview Of Remaining Parties And Claims

Plaintiff is a prisoner in the custody of the Hawaii Department of Public Safety. He is confined in Eloy, Arizona at the Saguaro Correctional Center ("SCC"), which is operated by Corrections Corporation of America ("CoreCivic"). The remaining defendants in this action are CoreCivic and four CoreCivic employees: Assistant Warden Griego, Unit Manager Guilin, Case Manager Weckwerth, and Correctional Counselor Hoskins (collectively, "Defendants").

Following summary judgment, only two claims remain for trial: (1) a § 1983 claim against Griego, premised on the allegation that Griego violated Plaintiff's First

Amendment rights in April 2016 by ordering other prison officials to search Plaintiff's prison cell, and then confiscate certain property found within the cell, in retaliation for Plantiff's filing of a lawsuit against the State of Hawaii and certain Hawaii officials in 2015; and (2) a state-law conversion claim against all five Defendants, which stems from the alleged confiscation of Plaintiff's property following the cell search.

II.     Procedural History

In May 2017, Plaintiff initiated this action by filing suit in Pinal County Superior Court. (Doc. 1-1.) It was removed to federal court in August 2017 (Doc. 1) and reassigned to the undersigned judge in October 2018 (Doc. 32).

In April 2018, the Court issued the Rule 16 scheduling order. (Doc. 22.) It authorized Defendants to take Plaintiff's deposition by August 20, 2018 and stated that no other depositions could be taken without leave of court. (*Id.* at 1.) As for interrogatories, requests for production, and requests for admission, it set a service deadline of September 17, 2018. (*Id.* at 2.) This deadline was later extended to November 16, 2018. (Doc. 30.)

On October 31, 2018, Defendants served interrogatories on Plaintiff. (Doc. 111-2.) The interrogatories at issue here are Nos. 17 and 22, which provided as follows:

> No. 17: Identify any and all witnesses, including impeachment witnesses, that you intend to call at trial. For each witness, provide a detailed description of the expected testimony of that witness and identify each and every document or exhibit that witness will testify about at trial.
>
> No. 22: Identify any statements or admissions you contend Defendants, made, including any statements admissible under FED. R. EVID. 801(d)(2), which you intend to introduce or use at trial, and identify the persons who made and/or observed or overheard the statement, and provide the full content of the statement.

(*Id.* at 3-4.)

On or about November 29, 2018, Plaintiff responded to these interrogatories. (Doc. 111-3.) As for Interrogatory No. 17, Plaintiff responded:

> Plaintiff objects to this interrogatory. Many of Plaintiff's witnesses will likely be SCC inmates. Providing the names and expected testimony of these inmate witnesses this far in advance of trial will allow Defendants the opportunity to harass, threaten, and/or transfer (to a different prison) these

> inmate witnesses. Plaintiff has observed such treatment of SCC inmates in the past, and therefore, has a legitimate concern that such treatment may befall inmates witnesses he intends to call. Further, Plaintiff has been unable to speak to such witnesses as of yet, and is therefore unaware of their current willingness to testify. Other than these inmate witnesses, Plaintiff intends to call the following persons to testify in regard to the following matters:
>
>> a) All named Defendants in the Complaint – these persons will be called to testify in regard to the matters alleged in the Complaint.
>>
>> b) Plaintiff – will testify in regard to the matters alleged in the Complaint.

(*Id.* at 4.) As for Interrogatory No. 22, Plaintiff responded: "Plaintiff believes that his response to interrogatory #12 is responsive to this interrogatory." (*Id.* at 5.) Finally, as for Interrogatory No. 12, Plaintiff responded:

> Defendant GUILIN, on several occasions, stated and/or implied that Defendant GRIEGO was the person that gave him the order/authorization to perform the search/confiscation. Defendant HOSKINS, on one occasion, stated that the search/confiscation was Defendant WECKWERTH and GRIEGO's doing. Defendant GRIEGO, on one occasion, acknowledged that he ordered/authorized the search/ confiscation. At that time, Defendant GRIEGO also stated that Plaintiff should "file [Plaintiff's] little lawsuit," but refrain from naming other Defendants besides GRIEGO. At that time, Defendant GRIEGO also stated that he couldn't wait to get to court and "get [Plaintiff] on the witness stand." At that time, Defendant GRIEGO further stated that Plaintiff can sue him "all [Plaintiff] wants," but Plaintiff should "be careful" suing officials back in Hawaii, because doing so could result in Plaintiff "losing" further property. Furthermore, Defendant GRIEGO habitually interferes with SCC inmates' legal efforts, and Plaintiff has experienced such interference on numerous occasions. Often times, this interference is carried out by other SCC staff at the direction of Defendant GRIEGO. Often times, while SCC staff carry out such directives, SCC staff freely admit that their actions are at the direction of Defendant GRIEGO, just as Defendant GUILIN and HOSKINS did in regard to the search/confiscation.

(*Id.* at 3-4.)

Defendants never moved to compel Plaintiff to provide any further response to these interrogatories and Plaintiff never supplemented his responses.

On December 17, 2018, Defendants moved for summary judgment. (Doc. 37.)

On April 1 and 30, 2019, respectively, Plaintiff filed his statement of facts (Doc. 51) and response (Doc. 55) to Defendants' summary judgment motion. In each filing, Plaintiff asserted that two non-party CoreCivic employees, Case Manager ("CM") Birdsong and Correctional Counselor ("CC") Jackson, were present during the search at the heart of this case and made statements to Plaintiff that suggested the search was improper. (Doc. 51-1 at 11-12 ¶ 48 ["After our property was removed from our cell and while the properly was being searched, I spoke to Correctional Counselor Jackson and then Case Manager Birdsong about the search. When I asked Correctional Counsel Jackson what was going on with my property, he stated that he was not involved and did not want to get involved with the search. When I asked Case Manager Birdsong what was going on with my property, he stated that it was being subject to a thorough search, and then he revealed that Unit Manager Guilin and Assistant Warden Griego asked and/or directed him to assist Guilin in performing the search. Birdsong stated that he declined to participate in the search because it seemed to be 'illegal,' or at least, 'sketchy.'"]; Doc. 55 at 3.) Plaintiff also enclosed affidavits from two fellow SCC inmates, Anthony Rabellizsa (Doc. 51-1 at 31-38) and Christopher Phanpradith (Doc. 51-2 at 1-9), to prove further support for his claims.

On September 23, 2019, the Court issued an order granting Defendants' summary judgment motion in part and denying it in part. (Doc. 58.) As discussed above, following summary judgment, only two claims remain for trial: (1) a First Amendment-based § 1983 claim against Griego and (2) a state-law conversion claim against all Defendants. (*Id.*)[1]

In May 2020, the Court appointed pro bono counsel to represent Plaintiff on a limited basis for pretrial and trial matters. (Doc. 79.)

In June 2020, Defendants filed an array of motions *in limine* ("MILs"). As relevant here, one MIL sought to exclude the alleged statements by CM Birdsong and CC Jackson

---

[1] Although the Court declined, in the September 2019 order, to reach the merits of another of Plaintiff's claims (Doc. 54 at 16-17), it entered summary judgment in Defendants' favor on that claim after soliciting supplemental briefing (Doc. 64).

- 4 -

because (1) the statements are hearsay and (2) Plaintiff had failed, during the discovery process, to disclose his intention to introduce the statements at trial. (Doc. 89 at 2 & n.2.) Another MIL sought to preclude Plaintiff from calling Rabellizsa, Phanpradith, or any other inmate as a witness at trial because Plaintiff hadn't disclosed them as potential witnesses in response to Interrogatory No. 17. (Doc. 91.)

On November 2, 2020, the Court issued an order resolving the parties' MILs. (Doc. 106.) On the one hand, the Court rejected Defendants' hearsay-based objections to the alleged statements by CM Birdsong and CC Jackson, concluding that the statements qualify as party-opponent admissions under Rule 801(d)(2) because "CoreCivic remains a defendant in this action and all parties seem to agree that Birdsong and Jackson were CoreCivic employees at the time they made the statements at issue." (*Id.* at 6.) On the other hand, as for Defendants' disclosure-related objections to those statements (and to the inmate witnesses), the Court authorized supplemental briefing because "the page limits applicable to MILs forced the parties to address the issues in somewhat abbreviated fashion" and "the Court's hope is that, because Plaintiff is now represented by appointed counsel, the meet-and-confer process will be more fruitful than it was during earlier stages of the case." (*Id.* at 9.)

On November 30, 2020, after the parties' meet-and-confer efforts proved unsuccessful, Defendants filed the pending motion for discovery sanctions. (Doc. 111.)

On December 21, 2020, Plaintiff filed a response. (Doc. 116.)

On January 8, 2021, Defendants filed a reply. (Doc. 117.)

**DISCUSSION**

I. <u>Legal Standard</u>

Rule 26(e) of the Federal Rules of Civil Procedure provides that a party "who has responded to an interrogatory . . . must supplement or correct" the response "[i]n a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." The

duty to supplement under Rule 26(e) is not limited to information learned for the first time after the underlying interrogatory response was provided—instead, it also "reaches information available at the time of the original response but not included therein." 1 Gensler, Federal Rules of Procedure, Rules and Commentary, Rule 26, at 882 (2021) (citing Fed. R. Civ. P. 26, adv. comm. note to 2007 amendments). *See also Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ("The duty to supplement . . . extends not only to newly discovered evidence, but to information that was not originally provided although it was available at the time of the initial disclosure or response.") (citation and quotation marks omitted). With that said, "[a] party who omitted information available to it at the time of the initial disclosures cannot 'cure' that omission merely by including it in a supplemental disclosure." Gensler, *supra*, Rule 26, at 883. As the Ninth Circuit has explained, proper supplementation under Rule 26(e) "means correcting inaccuracies . . . based on information that was not available at the time of the initial disclosure." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (citation and internal quotation marks omitted). *See also Ariz. Oil Holdings LLC v. BP W. Coast Prods. LLC*, 2015 WL 13567347, *1 (D. Ariz. 2015) ("Rule 26(e) does not allow parties to add information that should have been provided in the initial disclosure.").

Rule 37(c)(1) of the Federal Rules of Civil Procedure specifies the consequences for violating Rule 26(e)'s duty of supplementation. It provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." This rule "'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011), *superseded by rule on other grounds as recognized in Shrader v. Papé Trucks, Inc.*, 2020 WL 5203459, *2 n.2 (E.D. Cal. 2020).

"The party requesting sanctions [under Rule 37] bears the initial burden of establishing that the opposing party failed to comply with the [applicable] disclosure

requirements." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017). If the movant makes this showing, "[t]he party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012). When evaluating substantial justification and harmlessness, courts often consider (1) prejudice or surprise to the other party, (2) the ability of that party to cure the prejudice, (3) the likelihood of disruption of trial, and (4) willfulness or bad faith. *Silvagni*, 320 F.R.D. at 242.

"Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence," such that "litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merchant v. Corizon Health, Inc.*, __ F.3d __, 2021 WL 1232106, *4 (9th Cir. 2021) (citation omitted). Nevertheless, "[t]he automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e) . . . . Rather, the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* (citation omitted). The "party facing sanctions under [Rule 37(c)(1)] bears the burden of showing that a sanction other than exclusion is better suited to the circumstances." *Id.* at *5. "[A] noncompliant party must 'avail himself of the opportunity to seek a lesser sanction' by formally requesting one from the district court." *Id.* (citation omitted).

II.     CoreCivic Employees

    A.     **The Parties' Arguments**

Defendants move, pursuant to Rules 26(e) and 37(c)(1), to preclude Plaintiff from calling CM Birdsong and CC Jackson as witnesses at trial and/or from testifying about the admissions that CM Birdsong and CC Jackson allegedly made to him. (Doc. 111 at 1.)[2]

---

[2] Plaintiff expresses some confusion as to whether Defendants are also seeking relief based on a violation of Rule 26(a) and/or under Rule 37(c)(2) (Doc. 116 at 5-7 & n.1), but Defendants' reply clarifies that they are only seeking relief under Rule 37(c)(1) based on a violation of Rule 26(e) (Doc. 117 at 1-3 nn.1, 3).

- 7 -

1  Defendants contend that, to the extent Plaintiff intends to call CM Birdsong and CC
2  Jackson as witnesses at trial, he was required to disclose them (as well as a summary of
3  their anticipated testimony) in response to Interrogatory No. 17, and to the extent Plaintiff
4  intends to personally testify about the statements that CM Birdsong and CC Jackson
5  allegedly made to him, he was required to disclose those statements in response to
6  Interrogatory No. 22 (which called for the disclosure of all Rule 801(d)(2) admissions).
7  (*Id.* at 9-10.) Defendants further argue that Plaintiff's failure to include this information in
8  his interrogatory responses, and his failure thereafter to supplement those responses,
9  constituted a violation of Rule 26(e). (*Id.*) Last, Defendants argue that the discovery
10 violation was neither substantially justified nor harmless. (*Id.* at 12-13.)

11 Plaintiff responds that he "did not fail to provide Defendants with any information
12 purportedly required by Rule 26(e)" because his interrogatory responses "sufficiently
13 disclose[d] the witnesses mentioned in Defendants' motion." (*Id.* at 7-9.) Plaintiff also
14 faults Defendants for failing to "move to compel the specific names of the . . . agents of
15 CoreCivic that [he] intends to call at trial." (*Id.*) Alternatively, Plaintiff argues that "[a]ny
16 defect was cured" when he disclosed, in his summary judgment papers, his intent to
17 introduce the statements by CM Birdsong and CC Jackson. (*Id.* at 9-10.) Last, Plaintiff
18 argues that, even if he was required to update his interrogatories, the failure to do so was
19 harmless. (*Id.* at 11-12.)

20    B.   **Analysis**

21 Defendants' request for Rule 37(c)(1) sanctions related to the statements of CM
22 Birdsong and CC Jackson is denied because, even though Plaintiff violated Rule 26(e) by
23 failing to disclose those statements in his response to Interrogatory No. 22 and then failing
24 to supplement that deficient response, the disclosure violation was harmless.

25 As for whether a disclosure violation occurred, Interrogatory No. 22 required
26 Plaintiff to "[i]dentify any statements or admissions you contend Defendants, made,
27 including any statements admissible under FED. R. EVID. 801(d)(2), which you intend to
28 introduce or use at trial, and identify the persons who made and/or observed or overheard

the statement, and provide the full content of the statement." (Doc. 111-2 at 3-4.) The alleged statements by CM Birdsong and CC Jackson were obviously responsive to this query—indeed, during the MIL process, Plaintiff overcame Defendants' hearsay objection by arguing that the statements qualify as party-opponent admissions under Rule 801(d)(2). (Doc. 100 at 1 ["Defendants' Motion in Limine No. 2 . . . should be denied . . . [because] the statements of CoreCivic's agents, Birdsong and Jackson, are the statements of a party-opponent and therefore are not hearsay."].) Nevertheless, in his response to Interrogatory No. 22, Plaintiff didn't identify those statements. Instead, he simply offered a cross-reference to his response to Interrogatory No. 12, which made no mention of any statements by CM Birdsong or CC Jackson. Nor did Plaintiff ever supplement his responses to Interrogatory Nos. 12 or 22 to supply this missing information, as required by Rule 26(e).

There is no merit to Plaintiff's contention that Defendants were required to file a motion to compel before seeking Rule 37(c)(1) sanctions based on this disclosure violation. It must be emphasized that Plaintiff didn't raise any objections to Interrogatory No. 22—his only objections were to Interrogatory No. 17. Thus, Defendants had no reason to suspect that Plaintiff might be holding back additional information that was responsive to Interrogatory No. 22 and that they needed to file a motion to compel to obtain the withheld information. *See, e.g., Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993) ("Rule 26(e), which defines a party's duty to supplement expert interrogatory responses . . . imposes no requirement, express or implied, that a motion to compel precede a court's imposition of a sanction."); Gensler, *supra*, Rule 37, at 1183-83 ("The sanctions available under Rule 37(c)(1) are 'self-executing' in the sense that there is no need for an intervening motion to compel or order compelling production. By itself, the fact that the party failed to disclose or supplement triggers application of the sanctions scheme.").

Nor is there any merit to Plaintiff's contention that, even if his initial response to Interrogatory No. 22 was deficient, he "cured" the error for purposes of Rule 26(e) by disclosing CM Birdsong's and CC Jackson's statements in his summary judgment papers. It is true that, under Rule 26(e)(1)(A), a party need not "supplement or correct its disclosure

- 9 -

or response" if the "additional or corrective information" was "otherwise been made known to the other parties during the discovery process or in writing." But as discussed above, "[a] party who omitted information available to it at the time of the initial disclosures cannot 'cure' that omission merely by including it in a supplemental disclosure." Gensler, *supra*, Rule 26 at 883. A belated disclosure is deemed compliant with Rule 26(e) only if it is "based on information that was not available at the time of the initial disclosure." *Luke,* 323 F. App'x at 500. Here, Plaintiff didn't somehow discover the statements by CM Birdsong and CC Jackson for the first time after he provided his interrogatory responses in November 2018. This information has been long known to Plaintiff—he claims that CM Birdsong and CC Jackson made the challenged statements to him in April 2016. It would turn the concept of Rule 26(e) supplementation on its head to allow a party to withhold relevant, long-known information during the discovery process, even when it is responsive to an on-point interrogatory, and then disclose it for the first time in response to a summary judgment motion. *See generally Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 225 (D.D.C. 2015) ("While Rule 26(e) imposes a duty on all litigants a duty to timely supplement their productions, it is not a safe harbor for dilatory conduct. . . . Rule 26(e) does not sanction late disclosure for late disclosure's sake. Nor is it a license to sandbag the opposing party with reams of pertinent information on the eve of summary judgment."); *Cook v. Royal Caribbean Cruises, Ltd.*, 2012 WL 2319089, *1 (S.D. Fla. 2012) ("The mere fact that Plaintiff believes she is or was under a duty to supplement her discovery disclosures does not mean that complying with the duty trumps deadlines in the case and permits trial use of post-deadline disclosures, prejudicial consequences notwithstanding. If that were the rule, deadlines . . . would be meaningless and parties could wait until the eleventh hour to make substantively significant disclosures and then avoid exclusion by merely submitting a last-minute disclosure, justified by the duty-to-disclose rule.").

Because Defendants met their burden of establishing a Rule 26(e) violation, the burden shifts to Plaintiff to establish that the violation was substantially justified or harmless. In his response, Plaintiff doesn't contend he was substantially justified in

withholding the statements of CM Birdsong or CC Jackson.³ Instead, he focuses solely on harmlessness, arguing that any disclosure violation was harmless because (1) CM Birdsong and CC Jackson are CoreCivic employees and Defendants have long been on notice that they possess relevant knowledge concerning the search; (2) Defendants turned down his recent offer to allow CM Birdsong and CC Jackson to be deposed, which shows that "Defendants' Motion is nothing more than a cynical attempt to employ 'gotcha' litigation tactics"; and (3) the late disclosure will result in "no disruption of the litigation of this case" because it occurred in April 2019, "more than two years" ago, and trial has been repeatedly delayed due to COVID-19. (Doc. 116 at 11-13.)

Plaintiff's first two arguments lack merit. Defendants' general awareness that CM Birdsong and CC Jackson might possess relevant information concerning the search is not the same thing as notice that they made alleged party-opponent admissions to Plaintiff about the legality of the search. Plaintiff was required to disclose the existence of those alleged admissions during the discovery process. Nor were Defendants required to accept Plaintiff's after-the-fact offer to allow CM Birdsong and CC Jackson to be deposed. Defendants had no authority to accept such an offer because the discovery deadline has already expired (and expired deadlines cannot be changed without leave of court) and the cost and hassle of reopening discovery can, in any event, constitute cognizable harm for purposes of Rule 37(c)(1). *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862-64 (9th Cir. 2014) (affirming district court's exclusion of 38 witnesses as a Rule 37(c)(1) sanction for late disclosure, even though the witnesses were disclosed eight months before trial, because "[t]he late disclosure of witnesses throws a wrench into the machinery of trial. A party might be able to scramble to make up for the delay, but last-minute discovery may disrupt other plans. And if the discovery cutoff has passed, the party cannot conduct discovery without a court order permitting extension. This in turn threatens whether a scheduled trial date is viable. And it impairs the ability of every trial court to manage its docket.").

---

³ All of Plaintiff's arguments concerning substantial justification (Doc. 116 at 10-11) relate to his non-disclosure of the identities of other inmate witnesses.

This leaves Plaintiff's final harmlessness argument, which is that the late disclosure of CM Birdsong's and CC Jackson's statements was harmless under the unique facts and circumstances of this case. Although the Court is loathe to allow any party to benefit from discovery tactics that smack of gamesmanship and sandbagging, Plaintiff is correct that the disclosure violation here was harmless. Defendants didn't serve their interrogatories (including Interrogatory No. 22) on Plaintiff until the very end of the discovery period,[4] and by the time Plaintiff responded in November 2018, discovery had closed. Additionally, under the scheduling order in this case, no depositions (other than a deposition of Plaintiff, which had to be completed by August 2018 and which Defendants chose not to pursue) were allowed without leave of court. Thus, even if Plaintiff *had* timely disclosed the statements of CM Birdsong and CC Jackson in response to Interrogatory No. 22 (and/or timely supplemented his initial, deficient response), Defendants wouldn't have been able to take any additional discovery-related steps in response to that information—they wouldn't have been able to depose Plaintiff about the alleged statements, they wouldn't have been able to schedule depositions of CM Birdsong or CC Jackson, and they wouldn't have been able to issue supplemental written discovery requests. Under these unusual circumstances, Defendants suffered no harm from the fact that Plaintiff disclosed the alleged statements in April 2019 (during the summary judgment process) instead of in November 2018 (when the interrogatory responses were due). Either way, Defendants will have plenty of time to prepare for the introduction of those statements at trial. *See* Gensler, *supra*, Rule 26, at 882-83 (although "[s]upplementation does not cure faulty initial disclosures," "the fact that the information was made available later via the supplemental disclosure might help show that the earlier omission was harmless").

---

[4] In their motion, Defendants attempt to concede that they "served their interrogatories after the [discovery] deadline" and then proceed to argue that Plaintiff forfeited any untimeliness objection. (Doc. 111 at 12 n.7.) This attempted concession is confusing. The interrogatories were served on October 31, 2018. (Doc. 111-1 ¶ 3.) Although this service date would have been untimely under the original scheduling order, which set a deadline of September 17, 2018 for the service of interrogatories (Doc. 22 at 2), the scheduling order was later revised to push back the interrogatory service deadline to November 16, 2018 (Doc. 30). At any rate, it is clear that the interrogatories were served at the very end of the discovery period.

III.   Inmate Witnesses

    A.   **The Parties' Arguments**

Defendants contend that Plaintiff violated Rule 26(e) by failing to disclose the identity of other inmates witnesses in response to Interrogatory No. 17. (Doc. 111 at 9-17.) Defendants' arguments on this issue largely track their arguments concerning CM Birdsong and CC Jackson, although Defendants also contend that Plaintiff's proffered justification for refusing to disclose the identity of inmate witnesses, *i.e.,* disclosure might expose them to retaliation, was "pure speculation" and is not "a proper discovery objection . . . recognized by the Federal Rules." (*Id.* at 13-14.)

Plaintiff responds that he didn't violate Rule 26(e) with respect to the identity of other inmate witnesses because he raised a specific objection to Interrogatory No. 17 and Defendants never moved to compel. (Doc. 116 at 7-9 ["Because there was nothing either wrong or misleading about Mr. Lankford's response, and no Court order compelling further disclosure, no sanctions are available under that provision."].) Alternatively, Plaintiff argues (as he did with respect to CM Birdsong and CC Jackson) that he "cured" any supplementation failure by disclosing the identities of other inmates in his summary judgment filings. (*Id.* at 9-10.) Plaintiff next argues that any disclosure error was substantially justified because (1) his fears about retaliation were meritorious and/or (2) Defendants' own discovery violations interfered with his ability to discover the identities of other inmates who were present during the search. (*Id.* at 10-11.) Finally, Plaintiff argues that any disclosure error was harmless for the same reasons that any disclosure error related to CM Birdsong and CC Jackson was harmless. (*Id.* at 11-13.)

    B.   **Analysis**

Defendants have not met their burden of demonstrating that Plaintiff violated Rule 26(e) with respect to the identity of other inmate witnesses. Although Interrogatory No. 17 called for Plaintiff to identify all of his anticipated trial witnesses—meaning that the identities of inmates Rabellizsa and Phanpradith were responsive—Plaintiff's response didn't hide the fact that he intended to call inmate witnesses at trial. Instead, Plaintiff

objected to the disclosure of those witnesses' names on the ground that disclosure might expose them to retaliation. Defendants, in turn, never challenged Plaintiff's objection or moved to compel a further response. It was their burden to do so. *See, e.g., Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 457-58 (6th Cir. 2008) (when a responding party provides objections to interrogatories, this "shift[s] the burden to [the propounding party] to either clarify its discovery request or seek an order from the district court directing [the responding party] to comply with [the] discovery request as originally phrased"); Gensler, *supra*, Rule 33, at 1050 ("If a party responds with an objection . . . the burden is on the party who served the interrogatory to move to compel an answer.").

Defendants have not identified any case suggesting that a party who objects to an interrogatory, and whose objection goes unchallenged, nevertheless has an ongoing duty of supplementation under Rule 26(e) to supply the very information that is the subject of the standing objection. This would seem to defeat the whole point of raising objections under Rule 33(b)(4). *See, e.g., Info-Hold*, 538 F.3d at 457-58 (where responding party objected to interrogatory and propounding party never moved to compel, responding party had no "discovery obligation" to "update its response"); *BASF Corp. v. Old World Trading Co.*, 1992 WL 22201, *3 (N.D. Ill. 1992) ("Old World now seeks to bar evidence from witnesses not included in the response based on BASF's failure to supplement. Old World's argument is without merit. Had Old World successfully contested the objection, BASF would have had the duty to release the names. Old World, however, failed to move to compel a more complete answer or to notice the objection for a hearing. As a result, Old World has waived its right to seek supplementation under [Rule] 26(e)."). Under these circumstances, Defendants cannot seek sanctions under Rule 37(c)(1) predicated on a Rule 26(e) violation. *See, e.g., Collins v. Diversified Consultants Inc.*, 2017 WL 8942568, *12 n.11 (D. Colo. 2017) ("[T]he remedy Plaintiff seeks under Rule 37(c)(1) is inapplicable to Trans Union, as the challenged conduct (objecting to Plaintiff's discovery request as vague, overbroad, and seeking confidential material) does not arise from Trans Union's failure to disclose information required under Rules 26(a) or 26(e), but rather arises from Trans

Union's obligations under Rules 33 or 34; thus, Plaintiff's sanctions remedy is limited to Rule 37(a)(3)(B) (motion to compel production), which Plaintiff failed to utilize and cannot utilize now.").[5]

Alternatively, even if Plaintiff's conduct could be deemed a violation of Rule 26(e), Rule 37(c)(1) sanctions are unwarranted because any error was harmless. The harmlessness analysis here largely tracks the analysis concerning CM Birdsong and CC Jackson. Even if Plaintiff had disclosed the identities of Rabellizsa and Phanpradith in November 2018, when initially responding to Interrogatory No. 17, this would have been too late for Defendants to make use of that information during the discovery process. Thus, Defendants suffered no cognizable harm from the fact that this information wasn't disclosed until April 2019, which was still more than two years before trial.

Accordingly,

**IT IS ORDERED** that Defendants' motion for sanctions (Doc. 111) is **denied**.

Dated this 16th day of April, 2021.

Dominic W. Lanza
United States District Judge

---

[5] The Court perceives no tension between this conclusion and the conclusion, discussed in Part II.B above, that Defendants weren't required to file a motion to compel as to Interrogatory No. 22 before seeking Rule 37(c)(1) sanctions based on the non-disclosure of the CM Birdsong and CC Jackson statements. The difference between the two scenarios is that Plaintiff objected to Interrogatory No. 17 but didn't object to Interrogatory No. 22.